# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERICK STEVEN RHODE,

Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 329984
Van Buren Circuit Court
LC No. 13-018791-FH

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant pleaded guilty to operating while intoxicated, MCL 257.625(1)(a), third offense, MCL 257.625(9)(c). The trial court sentenced defendant to 30 days' jail, with credit for two days served, and 60 months' probation. Defendant's probation was revoked following his most recent conviction for violating probation, and he was sentenced on his underlying conviction to 18 months to 5 years' imprisonment with credit for 187 days served. Defendant now appeals his probation violation conviction and his sentence by leave granted.[1] We affirm defendant's probation violation conviction but remand for a *Crosby*[2] hearing and also for the trial court to establish the factual basis and statutory grounds to support the fees and fine it imposed as part of the judgment of sentence.

Defendant first argues that his probation violation was waived because the probation department failed to exercise due diligence in executing the bench warrant for defendant's arrest. We disagree.

Defendant never raised this issue in the trial court and has therefore failed to preserve it for appeal. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Unpreserved issues, whether non-constitutional or constitutional, are reviewed for plain error

---

[1] *People v Rhode*, unpublished order of the Court of Appeals, entered December 18, 2015 (Docket No. 329984).

[2] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

-1-

affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id*. at 763.

"[O]nce a warrant for probation violation has been issued, the probation authorities must exercise due diligence in executing it. If there is a determination that the probation authorities did not act with reasonable dispatch under all the circumstances, then there is a waiver of the probation violation." *People v Ortman*, 209 Mich App 251, 254; 530 NW2d 161 (1995). "[T]o determine whether the authorities exercised due diligence, it is appropriate to consider the length of the delay, the reason for the delay, and the prejudice to the defendant." *Id*. at 255. Whether the defendant was prejudiced is "merely a factor to be considered in determining whether the probation authorities exercised due diligence in executing the warrant." *Id*. The absence of prejudice does not, by itself, "defeat a defendant's claim that the probation violation must be waived where there is a finding that the authorities did not exercise due diligence." *Id*. at 255-256. Facts showing that the defendant is to blame for the delay weigh against concluding that the probation authorities did not exercise due diligence. *Id*. at 256.

In *Ortman*, a bench warrant was issued for the defendant as a result of allegations that he violated his probation. *Id*. at 253. The defendant stopped reporting to his probation officer after finding out about the warrant for his arrest, and he was arrested almost two years later pursuant to a warrant for an unrelated matter in another county. *Id*. Upon his arrest, the defendant's outstanding warrant for his previous probation violation was discovered. *Id*. Based on the delay in his arrest, the defendant moved to quash the warrant and dismiss the charge for the probation violation. *Id*. The trial court concluded that the probation authorities did not exercise due diligence in executing the probation violation warrant, but nonetheless denied the motion because it found that the defendant was not prejudiced by the delay. *Id*. at 254. The trial court revoked the defendant's probation and sentenced him to a term of imprisonment. *Id*.

On appeal, the defendant in *Ortman* argued that the two-year delay in executing the warrant waived the probation violation because of the lack of due diligence exercised by the probation authorities. *Id*. The defendant had lived in the house that he owned in Saginaw continuously for over 20 years before he was arrested, had not changed his name, had not moved, and had not otherwise tried to elude the probation authorities. *Id*. at 255-256. Probation had the defendant's correct address, and the supervisor of probation services could not explain why defendant's arrest warrant was not enforced for almost two years. *Id*. at 255. The *Ortman* Court further noted that "it appears that the delay in executing the warrant would have been even longer because defendant was arrested on a wholly separate matter (regarding a child support order from the Saginaw Circuit Court) and it was only at that point that the outstanding arrest warrant was noted." *Id*. The *Ortman* Court held that "[b]ecause the probation authorities did not exercise due diligence in executing the warrant, the probation violation should have been waived," reasoning that there was "no showing that defendant was to blame for the delay, and the delay did not benefit defendant." *Id*. at 256, 257.

Here, defendant was released from jail on November 20, 2013, after serving a jail sentence for a previous probation violation. Department of Corrections Agent Michael Henry testified that defendant had been ordered by the trial court to continue on probation, to report to

his probation officer, and to comply with an alcohol monitoring program after serving his jail sentence. Defendant never reported to probation after being released from jail. Defendant claimed that he thought that he was no longer under any obligation to report to probation. However, at defendant's probation violation hearing that is the subject of the instant appeal, the trial court found this claim unconvincing. After defendant was released from jail on November 20, 2013, Agent Henry tried to locate defendant by going to defendant's last known address, which defendant had previously reported to probation. Agent Henry spoke to the landlord, and he was informed that defendant had moved and was no longer living at the residence. While Agent Henry did not know the exact day that he went to the residence to look for defendant, he knew that it was sometime after November 20, 2013, when defendant was released from jail, and before he filed the petition alleging that defendant violated his probation. The bench warrant for defendant's arrest was filed on December 12, 2013. Defendant was eventually apprehended after he was arrested for another operating while intoxicated offense on January 13, 2015.

While there is no evidence on this record that probation officers searched for defendant after the warrant was issued, Agent Henry had already gone to defendant's last known address and determined that defendant had moved without updating his address with the probation office. There is no evidence in the record of defendant's whereabouts during the time between the issuance of the bench warrant and his eventual arrest. It would have been fruitless for Agent Henry to return to defendant's previous address in light of the information that he had already obtained. There is no evidence that the probation officers knew where defendant was residing or could have discovered his location, in contrast to the circumstances that were present in *Ortman*. Here, defendant was clearly to blame for the delay in being apprehended. Furthermore, while defendant casts the delay as one of "nearly two years," in reality, defendant was arrested approximately one year and one month after the bench warrant was issued, and his probation violation hearing was held within three months of his arrest. It is also unclear how defendant was prejudiced when his own actions prevented him from being located by probation authorities. Indeed, the major distinction between *Ortman* and the instant case is that in *Ortman*, the defendant was available in a location known to the probation authorities and the authorities chose not to take any action whereas in the instant case, defendant's location was unknown while he was actively evading the authorities. Thus, defendant's reliance on *Ortman* does not support his argument, and his probation violation should not be waived because the probation officers did not fail to exercise due diligence in executing the warrant. *Ortman*, 209 Mich App at 256-257.

Defendant has failed to show any error, let alone a plain or obvious error, based on his claim that the probation officers did not exercise due diligence in executing the bench warrant. *Carines*, 460 Mich at 763.

Next, defendant argues that his upward departure sentence was improper. We disagree, noting that both defendant and the prosecution failed to identify that this issue is controlled by this Court's decision in *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015).

When a trial court revokes a defendant's probation, "it *may* sentence the defendant 'in the same manner and to the same penalty as the court might have done if the probation order had never been made.' " *People v Hendrick*, 472 Mich 555, 562; 697 NW2d 511 (2005), quoting MCL 771.4. In other words, "revocation of probation simply clears the way for a resentencing

on the original offense." *Id*. (quotation marks and citation omitted). The legislative sentencing guidelines "apply to all enumerated felonies committed on or after the effective date, whether or not the sentence is imposed after probation revocation." *Id*. at 560. A trial court may consider a defendant's conduct during probation when determining whether an upward departure is justified. *Id*. at 562-563, 565.

MCL 769.34(4), which governs the imposition of an intermediate sanction when the upper limit of a defendant's recommended minimum sentence range is 18 months or less. But in *People v Lockridge*, 498 Mich 358, 364-365, 391, 399; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines are advisory and that a sentencing court is no longer required to articulate substantial and compelling reasons for departing from the guidelines range. Furthermore and as specifically relevant to the instant appeal, the *Lockridge* Court stated that "[t]o the extent that any part of MCL 769.34 or another statute refers to use of the sentencing guidelines as mandatory or refers to departures from the guidelines, that part or statute is also severed or struck down as necessary." *Id*. at 365 n 1.

In *People v Schrauben*, 314 Mich App 181, 195; 886 NW2d 173 (2016), this Court held that, "[i]n accordance with the broad language of *Lockridge*, under Subsection (4)(a), a trial court may, but is no longer required to, impose an intermediate sanction if the upper limit of the recommended minimum sentence range is 18 months or less." The *Schrauben* Court determined, pursuant to the remedy imposed by the *Lockridge* Court, that it was no longer necessary for a trial court to articulate substantial and compelling reasons to justify a departure from an intermediate sanction. *Id*. at 194-195. Consequently, the *Schrauben* Court affirmed the trial court's imposition of a 16-month minimum term of imprisonment even though the defendant was eligible for an intermediate sanction based on his recommended minimum guidelines range of 0 to 17 months because the departure did not need to be justified by substantial and compelling reasons. The decision whether to impose an intermediate sanction is discretionary, and the length of the minimum sentence was within the guidelines range. *Id*.

While a sentencing court has the discretion to impose a sentence that departs from the guidelines range without the necessity of substantial and compelling reasons, sentencing courts are still required to "consult the applicable guidelines range and take it into account when imposing a sentence." *Lockridge*, 498 Mich at 392. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness," and "[r]esentencing will be required when a sentence is determined to be unreasonable." *Id*. A sentencing court "must justify the sentence imposed in order to facilitate appellate review." *Id*.

"The appropriate procedure for considering the reasonableness of a departure sentence is not set forth in *Lockridge*." *Steanhouse*, 313 Mich App at 42. The *Steanhouse* Court adopted the "principle of proportionality" test from *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), as the method for determining the reasonableness of a sentence, concluding that this was "most consistent with the Supreme Court's directives in *Lockridge*." *Steanhouse*, 313 Mich App at 45, 46-47. The Court held "that a sentence that fulfills the principle of proportionality under *Milbourn*, and its progeny, constitutes a reasonable sentence under *Lockridge*. *Id*. at 47-48.

Nonetheless, when a defendant was the subject of an upward departure sentence that was imposed under the pre-*Lockridge* substantial and compelling reason standard for departures, the

*Crosby* remand procedure, as described in *Lockridge*, is the appropriate remedy. *Steanhouse*, 313 Mich App at 48. "[T]his is the proper remedy when, as in this case, the trial court was unaware of, and not expressly bound by, a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing." *Id.*; see also *People v Shank*, 313 Mich App 221, 226; 881 NW2d 135 (2015), and *People v Masroor*, 313 Mich App 358, 377; 880 NW2d 812 (2015). A *Crosby* remand should be granted in such circumstances, whether the defendant preserved a challenge to the reasonableness of a departure sentence, *Masroor*, 313 Mich App at 371, 377, or failed to preserve the issue for appeal, *Steanhouse*, 313 Mich App at 41-42, 48-49. A *Crosby* remand must be granted in such circumstances even if it appears that the principle of proportionality test would be satisfied. *Masroor*, 313 Mich App at 377.

In this case, defendant's recommended minimum guidelines range for his underlying conviction was originally determined to be 0 to 11 months, and defendant does not challenge this calculation on appeal. As a result of this guidelines range, defendant was eligible for an intermediate sanction, MCL 769.34(4), but the trial court departed by ordering a term of imprisonment. The trial court clearly expressed on the record that its sentence was an upward departure from the guidelines range, and it explained its substantial and compelling reasons to justify the departure. Although the trial court articulated its reasons that it found substantial and compelling to justify the departure, substantial and compelling reasons are no longer necessary to justify such a departure. *Schrauben*, 314 Mich App at 194-195. The trial court also departed upward by imposing an 18-month minimum sentence. Such a departure no longer needs to be justified by substantial and compelling reasons. *Lockridge*, 498 Mich at 392. To the extent that defendant's argument that the trial court failed to offer an adequate explanation for the departure could be interpreted as arguing that the reasons were not substantial and compelling, we find this argument without merit. An appellate court "need not review defendant's argument concerning whether the reasons articulated by the trial court were substantial and compelling" because "[a]fter *Lockridge*, a trial court is no longer required to provide a substantial and compelling reason for a departure from the sentencing guidelines." *Steanhouse*, 313 Mich App at 42 n 16. Therefore, it was within the trial court's discretion to impose a departure sentence. *Lockridge*, 498 Mich at 392; *Schrauben*, 314 Mich App at 194-195.

Nevertheless, a departure sentence must still be reasonable. *Lockridge*, 498 Mich at 392. Because defendant's upward departure sentence was imposed under the pre-*Lockridge* substantial and compelling standard,[3] defendant is entitled to a *Crosby* remand pursuant to *Steanhouse*, 313 Mich App at 48. As noted already, this is true regardless of whether defendant's appellate challenge on this issue is considered preserved.

Defendant retains the option to avoid resentencing. The purpose of a *Crosby* hearing is to determine whether *Lockridge* would have affected the defendant's sentence and whether

---

[3] Defendant was sentenced on May 5, 2015; the *Lockridge* opinion was issued on July 29, 2015.

-5-

defendant thus suffered any prejudice from the error. *Id*. At a *Crosby* hearing, a defendant must be afforded the opportunity to decline to be resentenced to avoid the possibility of a more severe sentence when the trial court is no longer subject to the mandatory constraint of the guidelines. *Lockridge*, 498 Mich at 395, 397-398; *Steanhouse*, 313 Mich App at 48. Otherwise, the trial court should comply with the *Crosby* procedure outlined in *Lockridge* and *Steanhouse*.

Finally, defendant argues that the trial court improperly ordered him to pay $372 in probation fees and $500 in penal fines without providing a factual basis to support these amounts. We agree and remand to the trial court for the limited purposes of establishing the factual basis and statutory grounds to support any fees or costs imposed and to modify the judgment of sentence, if necessary, accordingly.

This issue is unpreserved because defendant did not object when the costs and fees were imposed. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). Unpreserved challenges to the costs and fees imposed by the trial court are reviewed for plain error. *Id*. A trial court may impose costs in criminal cases only when costs are authorized by statute. *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014). The interpretation of a statute is a question of law that is reviewed de novo. *Id*.

What the trial court intended with respect to financial assessments is unclear from the record. The trial court stated during defendant's probation revocation sentencing hearing that it was "discontinuing" all fines and costs other than the crime victim fee and state costs, yet the judgment of sentence includes the challenged $372 probation fee and the $500 penal fine. "A court speaks through written judgments and orders rather than oral statements or written opinions." *People v Jones*, 203 Mich App 74, 82; 512 NW2d 26 (1993). But even considering the judgment of sentence alone requires a fair amount of speculation to determine how the trial court decided to impose the probation fee of $372 after defendant had previously been ordered to pay a $1,500 probation fee as part of his order of probation. Therefore, we find it appropriate to remand to the trial court for further explication of its financial assessments. See *Konopka*, 309 Mich App at 359-360 (remanding to the trial court after finding that the trial court did not err by imposing court costs but that the trial court had not established a factual basis that would allow the Court to "determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)").

To the extent that the probation fee imposed in the instant case represents the probation supervision fees that defendant accrued but did not pay while he was on probation, in so ordering, we note that the trial court should follow the procedure outlined in MCL 791.225a(6).

Defendant also challenges the factual basis for the $500 penal fine. As the prosecution notes, this fine is apparently authorized by MCL 257.625(9)(c), the statute under which defendant was convicted for operating while intoxicated, third offense. If so, the trial court was statutorily authorized to impose this fine on defendant. MCL 257.625(9)(c) ("[T]he person is guilty of a felony and shall be sentenced to pay a fine of not less than $500.00 or more than $5,000.00 . . . ."). But as previously stated, when the trial court sentenced defendant on his underlying conviction after revoking his probation, it indicated that the crime victim fee and state costs were the only financial assessments being imposed. Because this matter should already be

-6-

remanded for other reasons, it would be appropriate for the trial court on remand to clarify on the record whether it intends to impose the $500 fine.

We affirm defendant's conviction but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly